[Civ. No. 23621. Second Dist., Div. Two. May 27, 1959.]

MAYWOOD GLASS COMPANY (a Corporation), Appellant, v. H. W. STEWART, as Director of Employment, Respondent.

Edwin C. Boehler, Francis R. Dwyer and A. T. Folsom for Appellant.

Stanley Mosk, Attorney General, and William L. Shaw, Deputy Attorney General, for Respondent.

HERNDON, J.—By a decision rendered March 7, 1958, the Unemployment Insurance Appeals Board allowed claimant, Gladys M. Witt, certain unemployment insurance benefits, rejecting the contentions of her erstwhile employer, Maywood Glass Company, that she was ineligible for such benefits because she had been discharged for misconduct. Maywood thereupon filed a petition in the superior court for a writ of mandate to compel the Appeals Board to set aside its order allowing benefits and charging Maywood's reserve account with the amount paid. The entire cause was submitted to the lower court on a certified administrative record of the Appeals Board. The trial court found that the weight of the evidence

supported the decision of the Appeals Board and that Maywood was not deprived of any substantial rights in the antecedent administrative proceedings. Judgment was entered for the respondent Director of Employment. Maywood appeals contending (1) that the evidence is insufficient to support the judgment and (2) that the Appeals Board was guilty of an abuse of discretion in failing to consider certain affidavits submitted by Maywood.

Under provisions of the Unemployment Insurance Code, the Director of Employment maintains separate reserve accounts for each employer, crediting his account with contributions made and charging it with benefits paid. (Unempl. Ins. Code, § 1025 et seq.) However, the employer's reserve account is not charged if the claimant was discharged ". . . by reason of misconduct connected with his work." (Unempl. Ins. Code, § 1032.) Section 1256 of the Unemployment Insurance Code provides: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work.

"An individual is presumed to have been discharged for reasons other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. If the employer files such notice, the question shall immediately be determined in the same manner as benefit claims."

The facts of the instant case are not complex. Claimant Witt had been employed by Maywood Glass Company as a selector and packer of glass products for approximately five years. On November 20, 1957, Maywood gave her notice of discharge as the result of her packing of certain defective merchandise. Mrs. Witt's employment terminated on November 26, 1957, and she filed a claim for unemployment benefits on December 1, 1957.

Maywood was notified of the claim and on December 5, 1957, reported to the Department of Employment that Mrs. Witt "was discharged for consistently refusing to follow instructions . . ." and that ". . . she willfully persisted in packing imperfect bottles into the cartons. After being warned about this on several occasions . . . she was discharged. We

believe that the claimant was guilty of misconduct in that she willfully disregarded her instructions. . . ."

On December 26, 1957, in an interview before the Department of Employment Mrs. Witt stated, "I was fired because I packed some bad glassware. I knew better as I have been packing and selecting for the past 5 years and more. The reason I packed bad glassware was because of the rapidity in which we were working. I had a headache. I had been warned about this refusing to follow instructions. . . ."

On December 26, 1957, the Department of Employment issued a ruling that claimant was discharged for misconduct connected with her work and was therefore disqualified from receiving benefits. She filed an appeal from the ruling, and on January 27, 1958, a hearing was held before a referee of the Department of Employment at which were present the claimant, a representative of Maywood, and a representative of the Department of Employment. Testimony was taken under oath and various exhibits accepted.

Robert D. Harper, an auditor for Maywood, represented the company and testified in its behalf. He admitted that he had no personal knowledge of the circumstances of Mrs. Witt's discharge. However, he testified that he had verified the allegations of Maywood's report of December 6, by contacting Joseph Shasha, Maywood's Packing Superintendent. Harper testified that Shasha informed him that he [Shasha] had warned claimant on several occasions preceding her discharge about packing defective glassware.

Mrs. Witt testified that her foreman at Maywood Glass Company was Dick Swanson; that he never had occasion to warn her about defective packing; that Shasha was her supervisor next in line; that Shasha had notified her of her discharge on November 20, but that she had never had any conversations with either supervisor regarding defective merchandise she had packed. During the course of the hearing the referee asked the claimant whether she had ever been warned by her supervisors that she would be discharged if her work did not improve and claimant gave a negative reply. Mr. Harper made no request for a continuance, and the following day the referee issued a decision allowing claimant benefits and holding that she was not disqualified because of misconduct under section 1256 of the code. Maywood appealed from the decision of the referee to the Unemployment Insurance Appeals Board. Attached to the notice of appeal were three affidavits by Shasha and two other Maywood packing shift fore-

men to the effect that they had warned Mrs. Witt not to pack faulty ware prior to her notification of discharge. The Appeals Board declined to accept or consider these supplementary affidavits and returned them to Maywood. Thereafter, the Board issued a decision affirming the determination of the referee, and on May 1, 1958, Maywood filed its petition for writ of mandate. ██ As stated in *Ashdown* v. *State of Calif. Dept. of Emp.*, 135 Cal.App.2d 291, 299 [287 P.2d 176] : "In a mandamus proceeding in a trial court, wherein a decision of an administrative agency having statewide jurisdiction is reviewed, the trial court is authorized to exercise its independent judgment on the evidence. (*Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308 [196 P.2d 20] ; but upon an appeal from the judgment of the trial court in such a proceeding the province of the appellate court, with respect to the sufficiency of the evidence, is whether there is any substantial evidence which will support the judgment."

██ Appellant argues that "the overwhelming evidence before the referee was to the effect that claimant had been warned that she must cease from packing faulty glassware" and the referee's finding that claimant "had not been warned that she would be dismissed if the quality of her work did not improve" was unsupported by the evidence.

However, viewing the evidence and the reasonable inferences to be drawn therefrom according to the familiar rule (*Sultan Turkish Bath* v. *Board of Police Commrs.*, 169 Cal.App.2d 188, 193 [337 P.2d 203] ; *cf. Fromberg* v. *Department of Alcoholic Bev. Control*, 169 Cal.App.2d 230, 232 [337 P.2d 123] ) the record simply does not support appellant's contention. Mrs. Witt testified under oath that her supervisor never threatened her with discharge if her work did not improve. Despite her statements in a prior interview and the assertions of Maywood to the contrary, there is simply a conflict in the evidence which was resolved adversely to appellant by an administrative body. (*Ashdown* v. *State of Calif. Dept. of Emp.*, *supra*, 135 Cal.App.2d 291, 299.)

██ Moreover, even if the claimant *had* been warned, the evidence does not compel a finding that she was guilty of "misconduct" within the meaning of the statute. Although Mrs. Witt admitted packing defective bottles, she denied that she had intentionally done so. Mrs. Witt worked the "graveyard shift" from midnight to 8 o'clock in the morning. She testified that on the night in question she was suffering from a headache and that there was a high percentage of defective

glassware coming down the line. In these circumstances the trier of fact could reasonably conclude that her conduct did not constitute "misconduct" within the meaning of the statute. In *Boynton Cab Co.* v. *Neubeck*, 237 Wis. 249 [296 N.W. 636, 640], the Supreme Court of Wisconsin construed the unemployment compensation act of that state, which declared an employee ineligible for benefits if "[h]e has been discharged . . . for misconduct connected with his employment." Observing that the purpose and object of the statute was to "cushion the effect of unemployment," the court affirmed an allowance of benefits to an employee. The court said ". . . the intended meaning of the term 'misconduct,' as used in sec. 108.04(4) (a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." (See generally 1 CCH Unemployment Insurance Reporter, 2326.) While Mrs. Witt's conduct may have justified her employer's decision to terminate the employment relationship (see 32 Cal.Jur.2d 471, § 59) it did not necessarily constitute "misconduct" within the meaning of the statute. (*Cf. State* ex rel. *Employment Security Com.* v. *Smith*, 235 N.C. 104 [69 S.E.2d 32, 33].)

▆▆▆ Appellant's second assignment of error is equally unavailing. Section 1336 of the Unemployment Insurance Code authorizes the Appeals Board on its own motion to affirm, modify, or set aside any decision of a referee on the basis of the evidence previously submitted in the case, or to direct the taking of additional evidence. It is appellant's theory that the board abused its discretion when it rejected and refused to consider the affidavits which appellant submitted after it received notice of the referee's ruling. However, the question whether the claimant had been warned prior to November 20, 1957, was fully developed during the referee's hearing at which appellant was represented. At that time,

Maywood made no request for a continuance in order to present additional evidence along the lines of the three affidavits which they later submitted. It would have been unfair for the Board to have considered Maywood's affidavits without giving the claimant an opportunity to controvert them. The employer has the burden of establishing "misconduct" to protect its reserve fund. (*Boynton Cab Co.* v. *Giese,* 237 Wis. 237 [296 N.W. 630, 633]; *cf. Boynton Cab Co.* v. *Neubeck, supra,* 296 N.W. 636.) In these circumstances the board did not abuse its discretion in declining to reopen the case for the taking of additional evidence.

Affirmed.

Fox, P. J., and Ashburn, J., concurred.