593 P.2d 1088 (1979)
Paul A. LINDSEY, Appellee,
v.
The STATE of Oklahoma ex rel. the DEPARTMENT OF CORRECTIONS, Appellant.
No. 51735.
Supreme Court of Oklahoma.
March 6, 1979.
Ungerman, Conner, Little, Ungerman & Goodman by John N. Goodman, Oklahoma City, for appellee.
Larry Derryberry, Atty. Gen., of Oklahoma, Harold B. McMillan, Jr., and Jerry Earl Benson, Asst. Attys. Gen., Oklahoma City, for appellant.
*1089 HODGES, Justice.
The questions presented on appeal are whether: 1) the Department of Corrections may demote a correctional officer for failure to sign a statement which he did not know to be true, and 2) the jurisdiction which the district court as a court of review has to inquire into the reasonableness of the Department's administrative action.
Paul A. Lindsey, appellee, a State Merit System employee of the Department of Corrections [Department] with the grade of Correctional Officer II, was reduced to Correctional Officer I for alleged inefficiency.[1] The basis for his reduction in grade was his failure to complete and sign a required report. The demotion was appealed to the State Personnel Board which conducted a hearing and sustained the demotion. Review proceedings were instituted by appellee in District Court pursuant to the Administrative Procedures Act, 75 O.S. 1971 § 318.
Title 57 O.S.Supp. 1978 § 138(A)(D) requires that the accumulated credits for good conduct, blood donations, and training program participation of every inmate of the state correctional institutions be tallied and filed each month by the institution where the sentence is being served. A copy of the record is sent to the Department of Corrections, and a copy provided the respective inmate.[2] In accordance with this statute, *1090 the Oklahoma Department of Corrections developed form DOC-063001, and the administration of Oklahoma State Reformatory instituted a procedure whereby each supervisor of designated groups of inmates was assigned the duty of maintaining the forms.
The information contained in the report is given in the form of a statement that: a named inmate performed specified activities; he is to receive time reduction credits for days indicated by marks on a calendar which is contained on the report; and that the total credits for the month equal a number filled in by the preparer of the form. At the bottom of the page the preparer signs his name above one signature line and directly across is another signature line under which are the words "Approved (Warden-Supt.)."
The Merit System job description for Correctional Officer II includes maintenance of records and charts, and preparation of routine reports as part of the examples of work performed. One of the assigned duties of the appellee was the preparation of a monthly tally of the credits earned by the inmates assigned to the appellee for supervision.
The appellee was in charge of six inmates. The assignment to the appellee of the duty of preparing the inmate time credit report was communicated to the appellee by the Warden at staff meetings and through the appellee's immediate supervisor. The maintenance of the reports was begun at Oklahoma State Reformatory the latter part of September, or the first part of October, 1976. The appellee admitted to the State Personnel Board that he did not prepare the October report, except for the days which he worked. The Warden of the Oklahoma State Reformatory testified to the State Personnel Board that the report, submitted by the appellee at the end of November, was properly filled in for only four or five days and that the remainder of the report was blank; that when he discussed this with the appellee, the appellee stated:
"... [that he just didn't feel like he could fill out the report."
When the appellee discussed with the Warden his reasons for refusing to complete the November report, he stated that he would report information gathered from his personal knowledge, or information gathered from written reports of one who had personal knowledge. Thereupon, the Warden gave the appellee a direct order to complete the report. The order was not followed and the appellee's immediate supervisor completed the report.
The appellee was reduced in grade to Correctional Officer I on the grounds of inefficiency.[3] The Warden testified that the reduction was to a position that did not require the preparation of reports.
After considering the evidence and testimony presented, the State Personnel Board upheld the Department's demotion of the appellee.
Upon appeal of the Personnel Board's Order to the District Court of Oklahoma County, the Court considered the matter on the record, entered its Order which mandated *1091 appellee's retroactive reinstatement, and required that appellee complete the form only for those inmates under his daily control and supervision.[4]

I
Appellant asserts on appeal that the District Court did not act within its jurisdiction in promulgating the order prescribing the remedial action to be taken by the Department. We do not agree. The reviewing court is granted the authority in the exercise of proper judicial discretion to modify, reverse or remand the Department's order pursuant to 75 O.S. 1971 § 322.[5] It may affirm the decision of the agency if it is found to be valid and free from prejudicial error.

II
It is also alleged on appeal that the District Court exceeded its authority in finding that the appellee's demotion was not reasonable under the evidence. It is argued that the evidence that appellee failed to properly complete the necessary reports is made conclusive by his admission that he failed to do so. We find this argument to be highly unpersuasive.
The testimony reflects that the appellee felt that he could not fill out the report unless he either (1) had personal knowledge that it was true or (2) had some reasonable assurance of its truth. He agreed to complete the form on the basis of co-workers' verification but none was furnished. Despite an ostensible system for garnering the necessary information, in actuality appellee had no reasonable nor reliable method for finding out whether credits were earned. Appellee did prepare and sign the required report, setting forth the information which he knew to be true. He was charged with inefficiency because he would not state more. It is appellee's position that to be efficient on the terms set by his superiors would have been a derogation of his duty as Correctional Officer II, for it must be presumed that the requirement that he maintain *1092 records necessarily implies that he do so truthfully, accurately, and in good faith. To order appellee to act in a manner which might be construed as a falsification of records in violation of the criminal statutes is beyond the statutory and constitutional power of appellant.[6] To deprive him of his status in grade, and reduce his pay because he refused to obey such an order is unreasonable, arbitrary, and capricious.
Public employment may not be conditioned upon the surrender of constitutional rights.[7] The government as employer is bound by the requirements of substantive due process. A regulation not reasonably related to a valid state interest may not stand in the face of a due process attack.[8] Appellant's actions must be measured against the government's interest in controlling and rehabilitating its prison population. Title 57 O.S.Supp. 1978 § 138 implements a method for giving inmates time off their sentence when they participate in specified activities. Appellee concedes that institution of a record-keeping system for earned credits is rationally related to the statutory purpose. However, there can be no rational basis for supplying information based on conjecture or supposition. Appellee challenged only that regulation which required him to do so.
The trial court determined the Department's action was unreasonable under the attending circumstances. It is urged by the appellant that the action was not unreasonable because the Department has the authority to prescribe administrative duties to carry out the Legislative mandate, and that appellee's contention that his performance of the required duty would have placed him in jeopardy under the Oklahoma criminal statutes lacks validity because: 1) no one has been convicted under the statute, 2) the statute was held in Abernathy v. State, 69 Okla. Crim. 142, 101 P.2d 634 (1940) to be a special embezzlement statute, and 3) he could not be convicted because he lacked intent to commit a crime. We do not believe that a State Merit System employee should be required to make inaccurate reports merely to satisfy the peccadillos of administrative efficacy. In Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) the United States Supreme Court held that due process requires that rules of governmental bodies must not needlessly, unreasonably, arbitrarily, or capriciously impinge on the constitutional rights of a public employee. Nor do we believe an Administrative Agency may construe statutory duties to impose authority to require performance of an illegal act.
Certainly, the Department has an abiding interest in devising prompt and efficient procedures to achieve the legitimate state interest in the area, but as the United States Supreme Court stated in Stanley v. Illinois, 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551, 561 (1972):
"[The Constitution recognizes higher values than speed and efficiency. Indeed, one might verily say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to promote the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones."
The due process clauses of the State and Federal Constitutions afford protection against arbitrary and unreasonable administrative *1093 actions.[9] While it may be easier for the Department to handle its record keeping in such a carte blanche manner, administrative convenience is insufficient to validate a blatant violation of due process of law. The due process clauses require that the Department employ alternative administrative methods which do not so broadly infringe upon basic constitutional liberty in support of their legitimate goals.[10] Under the circumstances, appellee was denied substantive due process which is required by the Fourteenth Amendment of the United States Constitution and Art. 2 § 7 of the Oklahoma Constitution because appellant unreasonably, arbitrarily, capriciously and unlawfully deprived appellee of his property by reducing his grade and pay under the merit system. This is not a matter of administrative discretion. It is a matter of constitutional rights.
AFFIRMED.
WILLIAMS, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concurring.
LAVENDER, C.J., IRWIN, V.C.J., and OPALA, J., concurring in result.
NOTES
[1] It is provided by 74 O.S.Supp. 1977 § 833 in pertinent part:

"Any employee in the classified service may be discharged, suspended without pay for not to exceed sixty (60) days, or demoted by the agency, department, institution, or officer by whom employed for misconduct, insubordination, inefficiency, habitual drunkenness, inability to perform the duties of the position in which employed, willful violation of this Act or the rules prescribed by the State Personnel Board ..."
[2] The inmate credit program is delineated by 57 O.S.Supp. 1978 § 138(A)(D):

A. Every inmate of a state correctional institution who engages in work, attends school or participates in a vocational training program, approved or provided by the Department, shall have one (1) day deducted from his sentence for each day that he engages in any such activity. Earned credits may be subtracted from the total accumulated by an inmate, upon recommendation of the institution disciplinary committee, following due process, and approved by the warden or superintendent. Provided that lost credits may be restored by the warden or superintendent upon approval by the classification committee. Provided further, when a maximum and minimum term of imprisonment is imposed, this section shall apply only to the maximum term. No deductions shall be credited to any inmate serving a sentence of life imprisonment, however, a complete record of said inmate's participation in work, school, vocational training or other approved program shall be maintained by the Department for consideration by the paroling authority.
D. The accumulated time of every inmate shall be tallied each month and filed by the institution where the sentence is being served. A copy of this record shall be sent to the Department on a quarterly basis and a copy shall be provided the inmate.
[3] Appellant was given written notice pursuant to 74 O.S.Supp. 1977 § 833 as follows:

"The way you are presently performing in your position is with inefficiency due to your failure to properly complete the necessary paper work."
[4] The order of the District Court provides in pertinent part:

"It is clear from the record that the Petitioner was reduced to Correctional Officer I for the sole reason that he refused to complete and sign Department of Corrections Form DOC-063001 entitled "Inmate Time Credits" for inmates over which he had daily control and supervision when, because of his absence from the institution, he personally had no knowledge as to whether such inmates had worked or not. He was concerned about signing his name to records about which he had no personal knowledge.
"On review, the Court finds that the reduction in grade is not reasonable under the evidence in this case. If the Department merely wants a signature from someone who knows nothing about which he is signing, any clerk could do so but it is unreasonable to demote an employee for refusing to sign a statement that an inmate has worked a certain day when he has no personal knowledge of the fact."
[5] It is provided by 75 O.S. 1971 § 322:

"(1) In any proceeding for the review of an agency order, the Supreme Court or the District or Superior Court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this Act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.
(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.
(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant."
[6] It is provided by 21 O.S. 1971 § 531 in pertinent part:

"Every sheriff, coroner, clerk of a court, constable or other ministerial officer, and every deputy or subordinate of any ministerial officer who either mutilates, destroys, conceals, erases, obliterates or falsifies any record or paper pertaining to his office ... is guilty of a felony."
[7] Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Buckley v. Coyle Public School System, 476 F.2d 92 (10th Cir.1973); Donahue v. Staunton, 471 F.2d 475 (7th Cir.1972).
[8] Thompson v. Gallagher, 489 F.2d 443 (5th Cir.1974); Donahue v. Staunton, supra.
[9] Wolfenbarger v. Hennessee, 520 P.2d 809, 812 (Okl. 1974); State v. Parham, 412 P.2d 142, 154 (Okla. 1966).
[10] The District Court did not recommend a method for maintenance of appellant's records. An alternative procedure suggested in the hearing before the State Personnel Board by one of the members was to provide the form to the correctional officer who takes the work gang out, to be filled in when they were brought back. As the member said, "It obviously is so simple."